COMMONWEALTH *vs.* SAMUEL JENSKY.

Essex.    May 7, 1945. — June 4, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Betting. Evidence,* Relevancy and materiality, Of registering bets.

At the trial of a complaint under G. L. (Ter. Ed.) c. 271, § 17, for being found in a place with apparatus for registering bets on horse races, evidence, that, on a telephone kept in a concealed location on premises managed by the defendant, a police officer had within half an hour twelve conversations with persons calling who asked him to place bets on a horse race, was relevant and admissible in the circumstances, although the identity of the persons calling was unknown, no bets were placed, and two of the persons calling asked for some one by a name not the defendant's.

A conviction under G. L. (Ter. Ed.) c. 271, § 17, upon the charge of being found in a place with apparatus and devices for registering bets on horse races was warranted by evidence respecting a telephone which was fitted with a push-in connection and an arrangement whereby ringing of the bell might be prevented and which was kept in a concealed location on premises managed by the defendant; of conversations had by a police officer on such telephone with persons who asked him to place bets on a horse race; and of papers and publications relative to horse races and betting thereon found on the premises.

COMPLAINT, received and sworn to in the District Court of Lawrence on May 12, 1944.

Upon appeal to the Superior Court, the case was heard . by *Cabot,* J., without a jury.

*M. Nicholson,* for the defendant.

*E. F. Cregg,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.    This is a criminal complaint brought in a District Court charging the defendant with being "found in a place, to wit: in a room in the rear of the cafe situated at No. 81 Broadway . . . Lawrence with apparatus and certain devices, to wit: memoranda of bets, for registering bets" upon horse races.    G. L. (Ter. Ed.) c. 271, § 17. Upon appeal he was found guilty by a judge of the Superior Court sitting without jury.    The defendant's exceptions

relate to the admission of evidence and to the denial of his motion for a finding of not guilty.

The evidence was entirely from witnesses called by the Commonwealth. One Fleming, a police officer, testified as follows: On May 12, 1944, with two other police officers he went to 79 Broadway, which was an entrance to a hotel situated next door to a saloon managed by the defendant and operated by the same corporation which operated the hotel. The defendant met them on the stairway and asked what they wanted. Fleming said that they were looking for a telephone and "wanted to examine the room." The defendant showed them through all the rooms they desired to enter, but they found no telephone. Fleming asked where George English lived, and the defendant replied that George English did not live there any more, as he was in the navy. One Pekarski, a police officer, went to a telephone pay station in the saloon and dialed a number, while the other police officers unsuccessfully went through the building trying to hear the ring. Pekarski showed the defendant a telephone book listing the name of George English with the number "4163," and said that the telephone was in existence and that they were looking for it. The defendant said that he had that telephone downstairs, and conducted the officers into a room in the rear of the saloon. The room was a combination office and kitchen about five feet by four feet which contained records relating to the defendant's business. The defendant slid open a cupboard and took out a telephone which was constructed with a push-in connection. The telephone bell was part of the "contraption" and not in a separate box. Fleming connected the telephone by pushing a plug into the wall, and, when it began to ring, he lifted the receiver. Subject to the defendant's exception he testified as to the conversations which he had on the telephone. Persons whom he did not know asked him to place bets on certain horses running at Narragansett Park that afternoon. There were twelve such calls in half an hour in which initials only and no names were given. Two persons asked for "Russ." Fleming asked the defendant whether those calls were for

him, and he answered, "No." In a waste paper basket were found three torn slips of paper, one containing names of horses and amounts purporting to be bets on horses which had run at Narragansett Park the previous day, and two containing names of horses which were to run there that afternoon and amounts purporting to be bets thereon. The defendant, when asked, denied knowing anything about the slips. Fleming had known the defendant twenty-five years, and did not know him as "Russ."

Pekarski testified that he corroborated the testimony of Fleming, and that he had a further conversation with the defendant, in which he asked where the telephone having number "4163" was, and the defendant told him that he did not know.

One Ward, a representative of the telephone company, testified that number "4163" was listed to George English at 79 Broadway and was not a push-in telephone, and that the "contraption" they saw did not contain the type of push-in button ordinarily used by the company. There were introduced in evidence three different racing publications which had been found in the room, and which contained names of horses and approximate odds that the horses might pay.

The principal question is the admissibility of the evidence of the telephone conversations. We think that it was properly received in the circumstances. It was not offered to show that the telephone was the defendant's. Although not necessary, that could be found on the evidence earlier admitted. Nor was it offered as an admission. Its relevancy was to show that the room where the defendant was "found" contained "apparatus," in this case a telephone, which was used, or intended to be used, for registering bets upon horse races. It was highly cogent first hand information as to the actual use of the telephone equipment. In this respect there is an analogy in prosecutions for keeping a house of ill fame, in which evidence of the conversations of the inmates is admitted to show the character of the house. *Commonwealth* v. *Kimball*, 7 Gray, 328, 330. *Commonwealth* v. *Bagdasarian*, 257 Mass.

248. *Commonwealth* v. *Martin*, 304 Mass. 320, 324. Also similar are prosecutions for the illegal sale of intoxicating liquor, in which, to show the use of the premises, is admitted a great variety of evidence, such as the number of people visiting the premises, their dress and appearance, the carrying of containers, and the frequent presence of intoxicated persons in the vicinity. *Commonwealth* v. *Barnes*, 138 Mass. 511. *Commonwealth* v. *Leighton*, 140 Mass. 305. *Commonwealth* v. *Wallace*, 143 Mass. 88. *Commonwealth* v. *Brady*, 147 Mass. 583. *Commonwealth* v. *Finnerty*, 148 Mass. 162. *Commonwealth* v. *Lynch*, 151 Mass. 358. *Commonwealth* v. *Brothers*, 158 Mass. 200. The defendant contends that there is nothing to connect him or this particular telephone with the calls. When the testimony was received, there already had been admitted evidence tending to show that the telephone was listed at another address in the name of a person who did not live there; that the defendant had said that "he had that telephone" and had disclosed its concealed location not merely on premises managed by him but actually in a small room containing business records of his; and that the telephone had a push-in connection, and was fitted with an arrangement which allowed ringing of the bell to be prevented at will. It was of no consequence that no bet was in fact placed. See *Commonwealth* v. *Moody*, 143 Mass. 177, 178. It was also immaterial that the identity of the persons telephoning was unknown. That fact was not necessary to the issues. See *Beard* v. *United States*, 82 Fed. (2d) 837, 841, certiorari denied, 298 U. S. 655. Wigmore on Evidence (3d ed.) § 2155 (footnote 5 at page 618). Cases like *Dorchester Trust Co.* v. *Casey*, 268 Mass. 494, 495–496, are, therefore, distinguishable. It is argued that there was no evidence that number "4163" had been asked for by the persons placing the calls. We do not have for decision the case of a single call, although the admission of such evidence has been upheld. *McLaughlin* v. *State*, 123 Neb. 861, 864. We are dealing with twelve similar incoming calls in the space of one half hour over a telephone which on independent evidence could be found to be the

defendant's.   We think that it was for the judge to say whether the calls were in fact made.   See *McCarthy* v. *Peach*, 186 Mass. 67, 68.   In our opinion it was also for the judge to say what was the significance of the calls, and whether the telephone was there as an aid to the registering of bets.   *Commonwealth* v. *Healey*, 157 Mass. 455, 456.   It is not a fatal objection that two persons asked for a person by a name by which the defendant was not known.   This merely affected the weight of the evidence.   The cases in other jurisdictions upon which the defendant relies appear to be distinguishable, but to any extent that they are not, we do not follow them.

We treat the motion for a finding of not guilty as a request for a ruling that the evidence did not warrant a finding against the defendant and the denial of the motion as a ruling that the evidence warranted such a finding. *Commonwealth* v. *Hayes*, 311 Mass. 21, 27.   *Commonwealth* v. *Goldberg*, 316 Mass. 563, 564.   The ruling was right.   In addition to the testimony considered in connection with the admission of evidence, which could have been accepted as true, the judge could have found that the telephone had not been installed by the telephone company in the room where it was found; that it had been privately fitted out in the form in which it was observed; that the defendant, although he knew the location of the telephone, had previously denied that he did; and that the room contained papers relative to horse races and betting thereon.   *Commonwealth* v. *Healey,* 157 Mass. 455.   *Commonwealth* v. *Warren*, 161 Mass. 281.

*Exceptions overruled.*