COMMONWEALTH *vs.* NICHOLAS MELE.

Berkshire.   September 22, 1970. — October 30, 1970.

Present: SPALDING, KIRK, SPIEGEL, & QUIRICO, JJ.

*Constitutional Law,* Admissions and confessions, Assistance of counsel. *Practice, Criminal,* Assistance of counsel. *Evidence,* Admissions and confessions, On cross-examination. *Search and Seizure.*

The constitutional rights set forth in *Miranda* v. *Arizona,* 384 U. S. 436, did not apply in a criminal case begun in a District Court before the date of the *Miranda* decision, although upon appeal from a guilty finding the de novo trial in the Superior Court began after the date of the *Miranda* decision. [228]

Information contained in an affidavit by a police officer in support of an application for a search warrant under G. L. c. 271, § 23, for illegal gaming apparatus in a defendant's car, including observations relating to the car and reference to it as the place where the property would be found, established probable cause for issuance of the warrant [229]; the affidavit and the application were not invalid in that

they included lottery apparatus in the list of items sought while the information presented by the officer pertained only to bookmaking [229].

The requirements of G. L. c. 276, § 2A, as to the form of a search warrant were satisfied, although certain necessary information allegedly was omitted from the warrant, where such information was included in the application for the warrant and the application and the warrant were part of the same form and appeared on the same side of the same piece of paper. [229–230]

There was no abuse of discretion or prejudicial error on the part of the trial judge in a criminal gaming case in permitting questions to the defendant on cross-examination which tended to cast him "in the light of a gambler." [230]

Two COMPLAINTS received and sworn to in the District Court of Central Berkshire on March 22, 1965, and on March 29, 1965, respectively.

Upon appeal to the Superior Court the cases were tried before *Levine*, J., a District Court judge sitting under statutory authority.

*W. Stanley Cooke* for the defendant.

*Leonard E. Gibbons*, Assistant District Attorney, for the Commonwealth.

SPIEGEL, J. The defendant was first tried in the District Court of Central Berkshire on a complaint charging him with "being found on a public way" with certain gaming apparatus for "registering bets" upon the result of a horse race and a second complaint charging conspiracy to violate the gaming laws. He was found guilty on both complaints. Upon his appeal to the Superior Court he was tried before a jury and a verdict of guilty was returned on each charge. The case is here on the defendant's exceptions.

A hearing was held on the defendant's motions to suppress evidence allegedly obtained as a result of an illegal search warrant. Edmund F. McBride, clerk of the District Court, testified that State police Officer John F. Charles approached him on March 19, 1965, to apply for a search warrant for the defendant's car. Officer Charles presented an affidavit which had been prepared in advance. The affidavit, which was duly introduced in evidence, recited that Officer Charles during the course of a gaming investigation

in Pittsfield, had obtained reliable information "relative to a man known as 'Nick' [who] was booking in the area of the Busy Bee Cafe, West St., Pittsfield," and that "[t]his man was reported to be taking bets inside the Busy Bee and in the immediate area around this cafe. He was also using his car to store apparatus." The affidavit also said that Officer Charles and other officers had observed the defendant on several occasions exchanging money with other persons inside and outside of the Busy Bee Cafe, had observed horse racing forms being read and handed around inside the restaurant, and had observed the defendant getting into and out of his car while parked near the Busy Bee Cafe. The affidavit described the car with particularity. It indicated that the property being sought included "[b]ooks, apparatus and devices used for the purpose of registering bets upon the speed, trial or endurance of a beast, to wit; Horses, and the buying and selling of pools, including monies; and all lottery tickets, a share of a ticket, or any writing, certificate, bill, token, or other device used in the furtherance of a lottery." However, it contained no information or observations of a lottery. The Commonwealth stipulated that the information presented by Officer Charles to the clerk pertained only to bookmaking and not to any other types of gaming activity. The clerk issued the warrant pursuant to Officer Charles's application and affidavit.

The next day, March 20, 1965, the warrant was served on the defendant by Officer Richard W. Blanchard of the Massachusetts State police with several other officers. The officers searched the defendant's car and found copies of racing newspapers entitled "The Morning Telegraph," the "Armstrong Daily News Review," "another paper referred to as an Overnight . . . [containing] a mimeographed list of entries for a race track for the particular day," United States currency in the amount of $1,298.40, two checks, two pencils, and a pen. Officer Blanchard then told the defendant that he was under arrest for being found with apparatus for registering bets; that he did not have to say anything

if he did not want to; that anything he did say could be used against him; and that he was entitled to make a phone call to a lawyer. The defendant said that he did not wish to call a lawyer and would get one when he went to court. The defendant was then questioned. Trial commenced in the District Court on March 29, 1965.

The defendant contends that he "was not advised of his rights as set forth in the *Miranda* case that if he could not afford a lawyer that one would be provided for him prior to the interrogation." However, the rule stated in the *Miranda* case applies only to those cases begun after the date of the *Miranda* decision (June 13, 1966). *Johnson* v. *New Jersey*, 384 U. S. 719. The instant case began more than one year before the *Miranda* decision; nevertheless, the defendant contends that the *Miranda* rule should apply because his de novo trial in the Superior Court began after the date of the *Miranda* decision. We do not agree. This situation is governed by the case of *Jenkins* v. *Delaware*, 395 U. S. 213, where the Supreme Court of the United States refused to apply the *Miranda* rule to a retrial of a case in which the original trial had occurred before the decision in the *Miranda* case.

The defendant also contends that the trial judge erred in denying his motions to suppress the evidence seized as a result of the search warrant. He argues that the affidavit of Officer Charles is deficient because it (1) contains no "evidence" of observations relating to the defendant's car other than a conclusory statement that "He was also using his car to store apparatus"; (2) does not identify the car as the place where the property being sought is to be found; (3) does not contain enough information "which would warrant the judicial mind in concluding that any crime was being committed"; and (4) includes lottery apparatus within the list of items being sought, even though it contains no information relating to that form of gaming.

The rule has been established that affidavits for warrants should be interpreted in a "commonsense manner" rather than in a "hypertechnical" way. *United States* v. *Ventresca*,

380 U. S. 102, 109. "We deal with the affidavits *in their entirety* and draw inferences therefrom" (emphasis supplied). *Commonwealth* v. *Moran*, 353 Mass. 166, 170. Furthermore, we note that some of the defendant's assertions are based on an incomplete version of the affidavit. The complete affidavit, which was introduced in evidence, contains observations relating to the defendant's car and refers to the car as the place where the property is to be found. After reading the complete affidavit we are of opinion that the information contained in the affidavit and the "inferences which reasonably could be drawn from the information by a judicial mind" establish probable cause to make the search. *Commonwealth* v. *Brown*, 354 Mass. 337, 345.

The only remaining contention relating to the affidavit is that it is invalid because it includes lottery apparatus in the list of items being sought. However, the statute upon which the search warrant was issued applies to all forms of gaming and we believe that it does not require separate evidence for each specific type of gaming violation. G. L. c. 271, § 23. Where there is probable cause to search the premises for gaming apparatus, it is not unreasonable to include in the list of items other types of gaming apparatus covered by the same statute. This is consistent with the "commonsense" reading of affidavits which is permitted by the case of *United States* v. *Ventresca*, 380 U. S. 102. The defendant offers a similar argument concerning the *application* for a warrant. The foregoing comment regarding the affidavit is equally applicable.

The defendant also argues that the form of the search warrant does not satisfy the requirements of G. L. c. 276, § 2A, because it fails to refer to the affidavit and to the name of the person who filed it; fails to state that the applicant has probable cause to believe that the property is being used in illegal activities; and fails to identify specifically the motor vehicle to be searched and the property to be seized. The last contention appears to be based upon the inclusion of lottery apparatus in the list of items to be sought. Our previous discussion disposes of that point. The other con-

tentions appear to be based on the fact that each of the required elements that was allegedly omitted from the warrant itself is included in the application for the warrant. Since the application and the warrant are part of the very same form and appear on the same side of the same piece of paper, the requirements of G. L. c. 276, § 2A, are fully satisfied.

The defendant labels certain other contentions as miscellaneous issues. We see no need for stating each of them. Among these claims he alleges that certain questions asked of him in cross-examination should have been excluded because they tended to cast ". . . [him] in the light of a gambler." He also argues that the judge made remarks prejudicial to him. We discern no abuse of discretion. In any event we are unable to conclude that the alleged errors were prejudicial.

Finally, the defendant claims error in the denial of his motions for directed verdicts. From our examination of the entire record we are satisfied that the evidence was sufficient for the case to be submitted to the jury.

*Exceptions overruled.*